UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ADRIAN J. JACKSON,

        Plaintiff,

        v.                                       Case No. 19-C-1028

NATHAN TAPIO, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Adrian J. Jackson, who is currently serving a state prison sentence at Waupun Correctional Institution and representing himself, filed this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated. Jackson asserts that Defendants Nathan Tapio, Mark Jensen, and Melissa Block were deliberately indifferent in their failure to treat his asthma. He also asserted claims under Wisconsin law. The court has jurisdiction over Jackson's § 1983 claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The defendants filed a motion for summary judgment on December 16, 2019. To date, Jackson has not responded to the motion for summary judgment, which alone is grounds to grant the motion. *See* Civil L.R. 7(d) (E.D. Wis.). For this reason, and also because it is clear on the record before the court that the defendants are entitled to judgment as a matter of law, the defendants' motion for summary judgment will be granted and the case will be dismissed.

## BACKGROUND

Because Jackson did not respond to the motion for summary judgment, the defendants' proposed findings of fact (Dkt. No. 45) are deemed admitted for the purposes of summary

judgment. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); Civil L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment."). At all times relevant to this matter, Jackson was incarcerated at WCI. Nathan Tapio was an advanced practice nurse prescriber (APNP) from April 17, 2017 until November 6, 2018. Melissa Block was a Nurse Clinician II at WCI from May 1, 2017 until August 3, 2019. Mark Jensen was a Nurse Clinician II at WCI from January 5, 2009 until March 31, 2019.

On February 23, 2018, four unused albuterol inhalers, three unopened bottles of cetirizine, and one partially opened bottle of cetirizine were found in Jackson's cell. Jackson was dispensed an albuterol inhaler on October 13, 2017, and received his last refill on the inhaler on January 14, 2018. It is unclear how Jackson acquired an excess of inhalers. With findings of possible medication misuse and hoarding, APNP Tapio wrote an order that same day to expire Jackson's cetirizine and albuterol prescriptions and ordered spirometry testing. Spirometry is an office-based component of pulmonary function testing that measures lung capacity, volume, and flow rates. This testing was ordered to further evaluate Jackson's condition and confirm the diagnosis for the appropriateness of this medical therapy. Alternatives to the prescriptions Jackson received may include further evaluation by nursing staff or advanced provider staff as needed. WCI has 24-hour nursing care available, including urgent and emergent respiratory interventions, including inhalers, breathing treatments (nebulizers), and over the counter allergy medications. These interventions and therapies may be administered without an order from an advanced care provider (ACP). Nursing staff may also transfer a patient to a local emergency department independently if a need exists.

On April 19, 2018, RN Block saw Jackson after he made a nursing sick call complaining of shortness of breath and allergies. Upon examination, Jackson had clear, fluid speech, was able to complete full sentences without any need to catch his breath, and talked continuously for four full minutes. Jackson's lungs had good air movement down to bases, there were no wheezes auscultated with the stethoscope, and there were no nasal flaring or retractions observed that would indicate an inability to take in air. Based upon her examination, RN Block determined that all of Jackson's assessments were within normal limits. During the appointment, Jackson repeatedly argued that he could not catch his breath, that he was sick, and that RN Block was not helping him. He was angry that he would not be given an inhaler that day and asked RN Block multiple times to give him one. RN Block responded that he needed to complete the spirometry testing first and that, as a nurse, she could not prescribe him medication. Jackson raised his voice and talked continuously, which indicated that he had no shortness of breath. RN Block advised Jackson that his inhaler was discontinued due to hoarding four full inhalers that were found in his cell and that his examination results were normal. She instructed Jackson to contact the Health Services Unit if his condition worsened and that he would have lung testing, at which time an inhaler would be considered again. Had Jackson exhibited signs of asthma, RN Block would have referred him to his ACP for further evaluation and treatment of his symptoms.

On May 2 and 3, 2018, Jackson submitted Health Service Requests (HSRs) complaining about the denial of his inhaler, allergy pills, and neti pot. On May 4, 2018, RN Jensen responded to the HSRs noting that the medication had been discontinued because Jackson had been found hoarding his medication. Jackson submitted HSRs on May 11 and 16, 2018 asking about his referral to his ACP. On May 12 and 17, 2018, RN Jensen responded to those HSRs informing him that he was scheduled to be seen for his allergies and asthma. Jackson filed HSRs on May

3

13 and 16, 2018 about the discontinuation of his medication. On May 18, 2018, RN Jensen responded that Jackson had no orders for the relevant medications, that it was not his decision to make, and that APNP Tapio had discontinued his orders due to hoarding of medications. RN Jensen mentioned that he did not have prescriptive authority to override APNP Tapio's orders and that he would schedule an appointment with his new provider, Dr. Jeanpierre. RN Jensen did not assess Jackson for his allergies or asthma during the time relevant to this case.

Spirometry testing was performed on July 12, 2018 to confirm or deny a diagnosis and further evaluate Jackson's lung function. Jackson's spirometry results were within normal limits and did not correspond to a diagnosis of asthma.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing that there are no facts to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "Material" means that the factual dispute must be outcome-determinative under the law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the nonmoving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The moving party must do more than simply show that there is some metaphysical doubt as to the

material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

**ANALYSIS**

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. To prove a claim of deliberate indifference, the plaintiff must "establish that he suffered from 'an objectively serious medical condition' and that the ' defendant was deliberately indifferent to that condition.'" *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)).

The defendants assert that Jackson has not established that he suffered from an objectively serious medical condition because RN Block's examination of Jackson and the spirometry test performed in July 2018 indicated that Jackson was not suffering from any serious breathing problems at all times relevant to this case. Even if the court assumes that Jackson had a serious condition, Jackson must demonstrate that the defendants were deliberately indifferent to his medical needs. Deliberate indifference requires more than negligence or even gross negligence; it requires that the defendants knew of, yet disregarded, an excessive risk to the plaintiff's health

5

or safety. *Farmer*, 511 U.S. at 835, 837; *see also Estelle*, 429 U.S. at 104. It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). "A state officer is deliberately indifferent when he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted). In this case, Jackson claims that Tapio, Jensen, and Block failed to provide treatment for his asthma. At its core, Jackson's dispute amounts to a disagreement about proper medical treatment after the defendants found the medical evidence suggested that Jackson did not have breathing problems. Jackson's claim is not that the defendants were indifferent to his condition but that they questioned whether he had a condition that necessitated the treatment that had been prescribed.

As the record demonstrates, the defendants were not deliberately indifferent to Jackson's medical needs. On February 23, 2018, staff found four unused albuterol inhalers, three unopened bottles of cetirizine, and one partially opened bottle of cetirizine in Jackson's cell. APNP Tapio believed that Jackson was misusing or hoarding his medication and noted that use of medical therapy which is not indicated may pose a potential risk or harm to the patient if used or taken incorrectly. As a result, APNP Tapio wrote an order to expire Jackson's cetirizine and albuterol prescriptions and ordered testing to evaluate Jackson's condition and confirm the diagnosis for the appropriateness of this medical therapy. Even though Jackson's prescriptions would expire, APNP Tapio knew that Jackson had access to 24-hour care in case of an emergency.

Jackson did not complain of shortness of breath or allergies until April 19, 2018. At an appointment with RN Block that day, Jackson was angry that he would not be given an inhaler and asked RN Block multiple times to give him one. During RN Block's examination, Jackson had clear, fluid speech, was able to complete full sentences without any need to catch his breath,

6

and talked continuously for four minutes. RN Block concluded Jackson's assessments were within normal limits. RN Block told Jackson that his inhaler was discontinued due to hoarding, that his results were normal, that she did not have the authority to prescribe him medication, and that he was scheduled for spirometry testing. Jackson repeatedly argued that he could not catch his breath, that he was sick, and that RN Block was not helping him. He raised his voice and talked continuously, which indicated to RN Block that he had no shortness of breath. RN Block instructed Jackson to contact the Health Services Unit if his condition worsened. In short, RN Block thoroughly investigated Jackson's complaints through a physical examination and confirmed that Jackson had been scheduled for a spirometry test to confirm any potential asthma or breathing problems that she could not detect.

Throughout May 2018, Jackson submitted numerous HSRs complaining about the denial of his inhaler, allergy pills, and neti pot. RN Jensen responded to the HSRs noting that the prescriptions had been discontinued because he had been found to be hoarding his medication and advising that he was scheduled to be seen for his allergies and asthma by Dr. Jeanpierre. RN Jensen was not involved in Jackson's care and did not assess Jackson for his allergies or asthma. He did not have the authority to override APNP Tapio's orders and was permitted to rely on those orders in responding to Jackson's HSRs. *See Rasho v. Elyea*, 856 F.3d 469, 478–79 (7th Cir. 2017). Jackson's July 2018 spirometry results were within normal limits and did not correspond to a diagnosis of asthma.

In light of normal spirometry testing, normal examination findings, and evidence that Jackson misused and hoarded his medication, the defendants were not deliberately indifferent to a risk of serious injury. Any dispute Jackson may have with the defendants' actions amounts to

7

little more than second-guessing the conduct of trained medical staff. In sum, the defendants' motion for summary judgment with respect to Jackson's federal claims will be granted.

Jackson has also asserted state law negligence claims. Generally, when federal claims drop out of a case, federal courts decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3); *see Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Seventh Circuit has described a "sensible presumption that if the federal claims drop out *before trial*, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Nothing in this case suggests that the presumption should be ignored. Accordingly, Jackson's state law claims will be dismissed without prejudice so that they may be pursued in a state forum.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment (Dkt. No. 43) is **GRANTED** as to the federal claims, and such claims are dismissed. Jackson's state law claims are dismissed without prejudice. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 27th day of January, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court